NUMBER 13-02-440-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




THOMAS J. HENRY AND THE LAW
OFFICES OF THOMAS J. HENRY,                                      Appellants,

v.

ROBERT LOW, D.O., AND STEPHEN SMITH, M.D.,               Appellees.




On appeal from the 36th District Court
of Aransas County, Texas.




O P I N I O N

Before the Court En Banc
Opinion by Justice Wittig




 
         This is an attorney sanction case arising out of a products liability and medical
malpractice lawsuit. The underlying suit involved the death of Henry White, alleged
to have been caused by the drug Propulsid and the related medical treatment. Thomas
J. Henry and the Law Office of Thomas J. Henry (“Henry”), appellants, were attorneys
for the widow, Joyce White, and the estate of Henry White. Henry appeals an order
granting $50,000 in sanctions sought by two of the multiple defendants in the
underlying cause, Robert Low, D.O., and Stephen Smith, M.D. (the “Doctors”),
appellees. Henry contends that the trial court abused its discretion both by granting
sanctions and in the amount of the sanctions it imposed. We reverse and render. 
I. PROCEDURAL BACKGROUND
         Henry filed suit on behalf of the widow and the estate of White against Johnson
and Johnson, Inc., Janssen Pharmaceutica and related companies, Coastal Bend
Hospital, Inc., a nurse, and eight physicians, including the Doctors, on January 31,
2002. Contemporaneously, Henry filed a motion to withdraw, stating he had a
conflict of interest. The suit was filed five days before the statute of limitations ran. 
The trial court signed an order granting the motion to withdraw on May 6, 2002. The
Doctors answered and filed motions for sanctions pursuant to rule 13


 of the rules of
civil procedure and chapters 9


 and 10


 of the civil practice and remedies code,
seeking, among other relief, payment by Henry of a monetary penalty into the court. 
The plaintiffs filed a pro se notice of nonsuit on June 10, 2002. On July 2, 2002, the
trial court signed an order of nonsuit.


 The sanctions proceedings continued. 
         After notice to the parties, the trial court held a hearing on July 30, 2002 based
on the two sanction motions filed by the Doctors. Henry appeared at the hearing by
counsel only. The trial court took judicial notice of the pleadings and other papers in
the file. The Doctors testified that they did not prescribe or administer the drug
Propulsid to the deceased. Over multiple objections, two other doctors testified that
Henry had asserted claims against them that had no reasonable basis or that he
asserted virtually identical claims. On July 31, 2002, the trial court signed an order
granting the Doctors’ motions for sanctions and ordered payment by Henry of $50,000
into the registry of the court. The fine consisted of $25,000 for each of the Doctors’
motions. On August 2, 2002, the trial court signed findings of fact and conclusions
of law regarding its imposition of sanctions as well as a revised order incorporating its
findings and conclusions. Henry filed post-sanction motions to modify, vacate, or
reform the order and a motion for new trial. The trial court heard Henry’s post-sanction motions on October 15, 2002. Henry appeared and testified during the
hearing. The trial court denied the motions. This appeal ensued. 
II. JURISDICTION
         The Doctors filed their sanction motions before the plaintiffs nonsuited their
claims. Thus, the trial court had continuing jurisdiction to hear and determine the
sanction motions after the nonsuit. Tex. R. Civ. P. 162; In re Bennett, 960 S.W.2d
35, 38 (Tex. 1997). 
III. STANDARDS
A. Presumptions and Burdens of Proof in Sanctions Motions
         Generally, courts presume that pleadings and other papers are filed in good faith. 
GTE Communications Sys. Corp. v. Tanner, 856 S.W.2d 725, 730 (Tex. 1993) (orig.
proceeding).


 In determining if sanctions are proper, the trial court must examine the
circumstances existing when the litigant filed the pleading. Home Owners Funding
Corp. of Am. v. Scheppler, 815 S.W.2d 884, 889 (Tex. App.–Corpus Christi 1991,
no writ) (applying presumption of good faith to rule 13 sanction). The trial court
considers the acts or omissions of the represented party or counsel, not merely the
legal merit of a pleading or motion. Griffin Indus. v. Grimes, No. 04-02-00430-CV,
2003 Tex. App. LEXIS 3439, at *11 (San Antonio Apr. 23, 2003, no pet.); N.Y.
Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co., 856 S.W.2d 194, 205 (Tex.
App.–Dallas 1993, no writ). The party seeking sanctions bears the burden of
overcoming the presumption of good faith in the filing of pleadings. Tanner,
856 S.W.2d at 731.
 B. Standard of Review
           A trial court's imposition of sanctions is reviewed under an abuse of discretion
standard. In re Bennett, 960 S.W.2d at 40; Chrysler Corp. v. Blackmon, 841 S.W.2d
844, 853 (Tex.1992); Koslow’s v. Mackie, 796 S.W.2d 700, 704 (Tex. 1990);
Rudisell v. Paquette, 89 S.W.3d 233, 236 (Tex. App.–Corpus Christi 2002, no pet.). 
 Under an abuse of discretion standard, the appellate court reviews the entire record
to determine if the trial court acted arbitrarily and unreasonably and thus abused its
discretion. IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 444
(Tex.1997). We may not substitute our judgment for that of the trial court. Davis v.
Huey, 571 S.W.2d 859, 862 (Tex. 1978). The test for determining whether the trial
court abused its discretion is whether it acted without reference to any guiding rules
and principles to the extent the act was arbitrary or unreasonable. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); Alejandro v. Bell,
84 S.W.3d 383, 392 (Tex. App.–Corpus Christi 2002, no pet.). A trial court abuses
its discretion in imposing sanctions if it bases its order on an incorrect view of the law
or an erroneous assessment of the evidence. Randolph v. Jackson Walker, L.L.P.,
29 S.W.3d 271, 276 (Tex. App.–Houston [14th Dist.] 2000, pet. denied). 
IV. ANALYSIS
                    The Trial Court’s Discretion to Sanction under Chapter 10
         Henry’s first issue asserts that the trial court abused its discretion in imposing
sanctions. More specifically, Henry argues: (1) chapter 10's stringent requirements
do not apply to alternative pleadings; (2) that the trial court should not have based its
decision solely on one allegation when alternatives existed; (3) that the trial court
should have allowed evidence of alternative complaints; (4) there was no evidence of
Henry’s intent; (5) the trial court erred in basing sanctions on other grounds not pled;
(6) the trial court erred in basing chapter 10 sanctions on findings under rule 13 and
chapter 9; and (7) the trial court erred by failing to comply with the findings
requirements of chapter 10. We will only address Henry’s sub issues one, two, five,
and seven. See Tex. R. App. P. 47.1.
         The trial court in its order for sanctions stated that sanctions were warranted
“pursuant to § 10.004(b).”


 The order also recited that the sanction of $25,000 per
sanction motion should be paid “as a penalty into the Court pursuant to
§ 10.004(c)(2).”


 The order invokes only chapter 10 when ordering sanctions and
orders those sanctions paid into the court, a remedy available only under chapter 10. 
See Sterling v. Alexander, 99 S.W.3d 793, 799-800 (Tex. App.–Houston [14th Dist.]
2003, no pet.). When an order of sanctions refers to one specific rule, either by citing
the rule, tracking its language or both, we are confined to determining whether
sanctions are appropriate under that particular rule. Finlay v. Olive,
77 S.W.3d 520, 524 (Tex. App.–Houston [1st. Dist.] 2002, no pet.). Thus, we
review the order for abuse of discretion only under chapter 10 and not under rule 13
of the rules of civil procedure or chapter 9 of the civil practice and remedies code. 
         Section 10.001 of chapter 10 provides: 
         The signing of a pleading or motion as required by the Texas Rules
of Civil Procedure constitutes a certificate by the signatory that to the
signatory’s best knowledge, information, and belief, formed after
reasonable inquiry:
 
(1)the pleading or motion is not being presented for any
improper purpose, including to harass or to cause unnecessary
delay or needless increase in the cost of litigation;
 
(2)each claim, defense, or other legal contention in the
pleading or motion is warranted by existing law or by a
nonfrivolous argument for the extension, modification, or reversal
of existing law or the establishment of new law;
 
(3)each allegation or other factual contention in the
pleading or motion has evidentiary support or, for a specifically
identified allegation or factual contention, is likely to have
evidentiary support after a reasonable opportunity for further
investigation or discovery; and
 
(4)each denial in the pleading or motion of a factual
contention is warranted on the evidence or, for a specifically
identified denial, is reasonably based on a lack of information or
belief. 
 
Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (Vernon 2002). A court may punish
violations of chapter 10 by imposing sanctions on the “person, [the] party represented
by the person, or both” who “has signed [the] pleading or motion in violation of
Section 10.001.” Tex. Civ. Prac. & Rem. Code Ann. § 10.004(a) (Vernon 2002). 
         In his first two sub-issues, Henry complains the trial court abused its discretion
in concluding that sanctions lie for a pleading that asserts alternative claims even
though there is no identification of the particular defendants to which each claim
applies. The trial court should not sanction for an alternative pleading while ignoring
other applicable alternatives. In the petition he drafted and signed, multiple allegations
were made against four drug manufacturers, a hospital, a nurse, and eight physicians. 
Under strict liability, the petition alleged ten claims against the drug manufacturers. 
Twenty-five negligence allegations were also made against these corporate defendants,
plus four per se negligence allegations. The compound, complex pleading also averred
misrepresentation, fraud and warranty violations. A separate section of the petition
delineated the alleged negligence of a nurse, physicians and the hospital. This
separate section, against ten different individual defendants was the genesis of the
sanction proceedings.
           Sixteen separate allegations were made. Many of the allegations dealt directly
or indirectly with the drug Propulsid,


 its prescription, failure to warn, advise, treat 
and properly monitor the deceased. The last five allegations alternatively dealt with
improper diagnosis, monitoring and treatment. Unlike the allegations against the drug
manufacturers, allegations against the hospital, nurse, and physicians were in the
alternative.



         The pleading specifically stated: “[T]hey were negligent during the course of
treatment given to Plaintiff Henry White in one or more of the following particulars .
. . .” 
         The face of the pleading clearly did not implicate every physician, the nurse, or
hospital in every allegation. Nor did the pleading allege the Doctors committed any
particular act.
         The Doctors’ motions for sanctions drew careful aim only at the allegations that
they prescribed Propulsid. “This Defendant is accused of negligence in connection with
an assertion that he prescribed the drug Propulsid to the decedent, Henry White. In
truth and in fact, this Defendant never prescribed or provided Propulsid for Mr. White.” 
Both Doctors attached affidavits stating they did not prescribe the drug and their
hearing testimony echoed this complaint. The sanction motions continued: “The
medical records . . . contain no references to either physician [having] prescribed or
approved Propulsid for the decedent.” Because both Doctors only treated the
deceased at the hospital where he died, there seems to be little doubt the Doctors
were not involved in the allegations dealing with the prescription of Propulsid, failure
to warn, advise, treat and properly monitor the deceased before admission to the
hospital. Rather the proof showed their treatment of the deceased was after his stroke
and hospitalization.
         At the hearing, the trial court rejected as irrelevant most of Henry’s attempts to
cross examine or adduce evidence concerning material allegations of negligent
treatment in the hospital leading to the death of Henry White. Thus, the $50,000
sanction was based upon only select allegations, involving a drug the Doctors did not
prescribe. The trial court clearly rejected Henry’s argument concerning alternative
pleadings. Yet there was no proof of which alternative allegations were directed at the
Doctors.
         Henry argues the petition did not specifically accuse the two Doctors of
prescribing the drug. Instead, alternative acts of negligence against several physicians
were made. Henry also argues the Doctors even filed special exceptions claiming the
pleadings were vague, ambiguous, and unclear. Henry argues the proper remedy for
a pleading lacking specificity is special exceptions. See Tex. R. Civ. P. 91; see also
Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 897 (Tex. 2000) (an opposing
party should use special exceptions to identify defects in pleading so that they may be
cured). We agree.
         The Doctors counter that Henry’s conduct was nevertheless sanctionable
because chapter 10 provides “each allegation or other factual contention in the
pleading or motion has evidentiary support, or for a specifically identified allegation or
factual contention, is likely to have evidentiary support after a reasonable opportunity
for further investigation or discovery . . . .” Tex. Civ. Prac. & Rem. Code Ann. § 
10.001(3) (Vernon 2002). Chapter 10's language is facially stronger than the
language of Federal Rule 11(b), which requires “the allegations or other factual
contentions” have or will likely have evidentiary support. See Fed. R. Civ. P. 11(b)(3). 
The Seventh Circuit has ruled that rule 11 applies to all statements and each claim
must have sufficient support; each must be investigated and researched before filing. 
Frantz v. United States Powerlifting Fed., 836 F.2d 1063, 1097 (7th Cir. 1987). 
Indeed, the case states that “Each claim must have sufficient support; each must be
investigated and researched before filing.” Id. at 1067. Our reading of chapter 10
agrees with this analysis. However, Frantz deals with an alleged conspiracy against
only three actors, all of whom allegedly would have been legally responsible for each
alleged act. See id. at 1064. A materially different scenario exists where alternative
allegations are pled against multiple independent actors. The Fifth Circuit, the Doctors
argue, has also rejected the argument “that one cannot sanction a party for a pleading
that contains frivolous claims if it also contains nonfrivolous claims.” Bay State
Towing Co. v. Barge Am. 21, 899 F.2d 129, 133 (5th Cir. 1990). Rule 11 sanctions
cannot be escaped with respect to a document that is basically false or misleading or
inadequately supported. Id. We agree. However, Bay State Towing is a two-party
case, without alternative claims. Id. Here, the Doctors only complained and only
offered proof that some or only one of the alternative allegations did not apply to
them.


 They neither contended nor proved that the allegations surrounding the
prescription of the unsafe drug Propulsid were frivolous, unsupported, not investigated
or not researched. To the contrary, the Doctors totally divorced and distanced
themselves from these allegations. At the time the petition was filed, there were a
significant number of cases pending throughout the country concerning Propulsid. All
of the federal cases have been or are being transferred by the Judicial Panel on
Multidistrict Litigation ("JPMDL") to the Propulsid Multidistrict Litigation ("MDL"),
currently pending in the Eastern District of Louisiana. See, e.g., In re Propulsid Prods.
Liab. Litig., MDL No. 1355, 2003 U.S.Dist. LEXIS 18,582 (E.D.La Oct. 16, 2003). 
The Doctors only complained that the allegations regarding the prescription of
Propulsid did not apply to them. In short, the Doctors did not contend or prove either
that Propulsid was safe or that the alternative allegations concerning their hospital
treatment were sanctionable. In the first instance, they failed to show which of the
sixteen allegations applied to them.
         The rules of civil procedure recite a myriad of circumstances allowing the joinder
of parties and claims. For example, persons may be joined that are needed for a just
resolution. Tex. R. Civ. P. 39. All persons may be joined in one action as defendants
if there is asserted against them jointly, severally, or in the alternative, any right to
relief in respect of or arising out of the same transaction, occurrence, or series of
transactions or occurrences and if any question of law or fact common to all of them
will arise in the action. Tex. R. Civ. P. 40 (emphasis added). 
A party may set forth two or more statements of a claim or defense
alternatively or hypothetically, either in one count or defense or in
separate counts or defenses. When two or more statements are made in
the alternative and one of them if made independently would be
sufficient, the pleading is not made insufficient by the insufficiency of
one or more of the alternative statements. A party may also state as
many separate claims or defenses as he has regardless of consistency
and whether based upon legal or equitable grounds or both.

Tex. R. Civ. P. 48. 
         Thus, relief in the alternative or of several different types is patently authorized. 
Where there are several counts in the petition and entire damages are given, the
verdict or judgment shall be good notwithstanding the fact that one or more counts
may be defective. Tex. R. Civ. P. 49.
          “Each claim founded upon a separate transaction or occurrence and each
defense other than denials shall be stated in a separate count or defense whenever a
separation facilitates the clear presentation of the matters set forth.” Tex. R. Civ. P. 
50(a). 
The plaintiff in his petition or in a reply setting forth a counterclaim and
the defendant in an answer setting forth a counterclaim may join either
as independent or as alternate claims as many claims either legal or
equitable or both as he may have against an opposing party. There may
be a like joinder of claims when there are multiple parties if the
requirements of Rules 39, 40, and 43 are satisfied.

Tex. R. Civ. P. 51(a).
         We can only conclude our rules expressly permit parties to proceed on
alternative theories of relief. Regency Advantage Ltd. P’ship v. Bingo Idea-Watauga,
Inc., 936 S.W.2d 275, 278 (Tex. 1996); see Tex. R. Civ. P. 48. 
         Chapter 10's stringent pleading requirements must be viewed not in a vacuum,
but in the correspondingly liberal pleading allowances of the rules of procedure. By the
black letter of the rules, Henry was allowed to join multiple parties and claims. Tex.
R. Civ. P. 48 & 40. Chapter 10 requires each allegation or other factual contention
in the pleading or motion to have evidentiary support. Tex. Civ. Prac. & Rem. Code
Ann. § 10.001(3) (Vernon 2002). However, we do not read chapter 10 to require that
a claim or defense against one party also apply to all other parties. An alternative
claim against a nurse need not apply against a physician. Nor does chapter 10 require
that the evidentiary support against one party also be evidence against another party. 
Evidence against one physician need not support a claim against another physician.


 
Rather, the plain meaning of chapter 10, in the context of the rules of civil procedure,
means each allegation or other factual contention has evidentiary support as it pertains
to the claim or defense made on behalf of, or against, one of the multiple parties. See
id.; see also Tex. R. Civ. P. 48, 40. We sustain Henry’s first two sub-issues.
         Henry also argues that due process requires notice before other unrelated
litigation can be considered as a basis for sanctions. The trial court, in its finding
number fifteen, specifically noted that Henry “consistently” engaged in a similar
pattern. Yet, no notice was given to Henry that other allegations were an intended
basis of sanctions. 
         The Doctors argue that the trial court was entitled to consider “other wrongs
or acts” as evidence of motive and intent. They cite Falk & Mayfield L.L.P. v. Molzan,
974 S.W.2d 821, 824 (Tex. App.–Houston [14th Dist.] 1998, pet. denied). Molzan
is not a chapter 10 case. See id. Rather it deals with rule 13, and mentions that
evidence of two other suits helped establish the required element of bad faith. Id. 
There was no contention concerning lack of notice, as here. The Doctors further argue
Henry was not entitled to greater notice than he received, citing Sterling v. Alexander,
99 S.W.3d 793, 798 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). According
to Sterling, “So long as the due process requirement of notice and hearing are
satisfied, the only requirement of the motion contained in chapter 10 is that it must
‘[describe] the specific conduct violating Section 10.001.’” See id. This is the very
point Henry makes. Henry had notice of a hearing and counsel attended. However,
there was neither pleading nor notice that the Doctors would urge other specific
conduct as a basis for sanctions. And the trial court’s findings reflect that it used the
unnoticed conduct as a basis for the sanctions.
          The power to sanction is of course limited by the due process clause of the
United States Constitution. See U.S. Const. amend. XIV; see Tex. Const. art. I, § 19
(due course of law); Tex. Civ. Prac. & Rem. Code Ann. § 10.003 (Vernon 2002) (notice
of allegations and reasonable opportunity to respond required); In re Bennett, 960
S.W.2d at 40. Texas follows a "fair notice" standard for pleading, which looks to
whether the opposing party can ascertain from the pleading the nature and basic
issues of the controversy and what testimony will be relevant. Horizon/CMS
Healthcare Corp., 34 S.W.3d at 896. In Burnett v. James, 564 S.W.2d 407, 409
(Tex. Civ. App.–Dallas 1978, writ dism'd), the court observed that the general rule is
that a prayer for general relief will authorize judgment for any relief a trial court has
jurisdiction to grant so long as the judgment is supported by the allegations and proof
and is consistent with the theory of recovery stated in the pleadings. Id. (citing
Jennings v. Tex. Farm Mortgage Co., 124 Tex. 593, 80 S.W.2d 931 (1935); Seureau
v. Mudd, 515 S.W.2d 746 (Tex. Civ. App.–Houston [14th Dist.] 1974, writ ref'd
n.r.e.)). Here, no general relief was requested. 
          Furthermore, in certain instances, the type of relief requested must be
specifically prayed for, or the trial court cannot grant it. Id. (rescission is one of these
instances); see also Green Tree Acceptance, Inc. v. Pierce, 768 S.W.2d 416, 421
(Tex. App.–Tyler 1989, no writ). Because the applicable code requires a motion for
sanctions thereunder to describe the specific conduct violating section 10.001, we
hold that the Doctors’ pleadings do not support any sanctions under chapter 10 for
unrelated and unnoticed prior litigation. See Tex. Civ. Prac. & Rem. Code Ann. §
10.002 (Vernon 2002); Davila v. World Car Five Star, 75 S.W.3d 537, 542-43 (Tex.
App.–San Antonio 2002, no pet.) (under pleadings, sole grounds for sanctions at trial
was section 17.50; other post-trial sanctions under rule 13 and chapter 10 not
considered by the trial court); see also Metzger v. Sebek, 892 S.W.2d 20, 51 (Tex.
App.–Houston [1st Dist.] 1994, writ denied) (where sanctions order refers to one
specific rule, review limited to that rule).
         We further observe, although not specifically argued by Henry, that both
Doctors began their preamble of virtually identical motions for sanctions, stating they
were filing the motions under rule 13, chapter 9 of the Texas Civil Practice and
Remedies Code and chapter 10. However, their requested relief under identical
paragraphs VIII, unequivocally stated: “This Defendant respectfully move[s] the Court,
pursuant to Chapters 9 and 11 of the Texas Civil Practices & Remedies Code, to enter
an order as follows . . . .” The paragraph then asks that pleadings be stricken, and for
an order dismissing claims, and requiring Henry to pay expenses and attorneys fees
and a monetary penalty into the court. The prayer asked the court to grant the motion
“and that the Court award the relief requested hereinabove in its entirety.” There was
no prayer for general relief, and the only relief requested was under Chapters 9 and 11. 
See Tex. Civ. Prac. & Rem. Code Ann. §§ 9.001-.014, 10.001-.006 (Vernon 2002). 
We sustain Henry’s issue regarding lack of notice and pleadings that unrelated lawsuits
would be urged and used as a basis for sanctions.
         Next, we address Henry’s argument that the trial court did not include any
specific findings that would justify a chapter 10 sanction. Chapter 10 mandates the
trial court shall describe both the conduct and basis for its sanctions. Tex. Civ. Prac.
& Rem. Code Ann. § 10.005 (Vernon 2002). The use of the word “shall” in the statute
indicates that the requirement for particularity in the sanction order is mandatory. 
Univ. of Tex. at Arlington v. Bishop, 997 S.W.2d 350, 355 (Tex. App.–Fort Worth
1999, pet. denied). Aside from setting out the procedural history of the case and
various statutory language, one conclusory finding is offered as support for the
sanctions. That finding merely tracks the statutory language of chapter 10. Finding
of fact 13 states: 
[E]ach and all the allegations brought against Drs. Low and Smith and
therefore the lawsuit brought against these physicians, did not, on
January 31, 2002, and do not now, have evidentiary support; nor were
they on January 31, 2002 likely to have evidentiary support after a
reasonable opportunity for further investigation or discovery in
contravention of the requirements of chapter 10 of the Texas Civil
Practice and Remedies Code.
 
         First, we are constrained to note the vast over-reach by the drafter of this
finding, which we assume to be the Doctors’ counsel. The trial court excluded cross-examination concerning the allegations against the Doctors contained in Henry’s
original petition, save and except those narrowly dealing with the drug Propulsid.


 
Thus, at the outset, this finding is patently unsupportable and erroneous. 
         Secondly, and to this point, the finding is no more than a general conclusory
statement. In sum, the finding could just as well say, Henry had no evidence and
could not reasonably expect to discover any evidence. Evidence of or pertaining to
what? The doctors were at the hospital and were charged with the responsibility of
diagnosing and treating a man suffering from a stroke. They allegedly failed to meet
their responsibilities in diagnosing the cardiac condition caused by the drug, failed to
properly read and interpret the ECGs, failed to administer proper treatment, failed to
follow up on ordered tests, and the pro se widow’s husband died. The medical
records are conspicuous by their absence from the record. Henry ordered the hospital
and doctors’ records, presumably for review, but neither the trial court nor the
appellate court are afforded this critical evidence. Under the finding, no specific
conduct is delineated. The finding fails to explain the basis for the significant sanction
imposed. See Tex. Civ. Prac. & Rem. Code Ann. § 10.005 (Vernon 2002).  
         By analogy, rule 13 imposes a duty on the trial court to point out with
particularity the acts or omissions on which sanctions are based. Mattly v. Spiegel,
Inc., 19 S.W.3d 890, 895 (Tex. App.–Houston [14th Dist.] 2000, no pet.). The
requirement that the trial court state the particulars of the good cause for imposing
sanctions is mandatory. Id. (citing GTE Communications Sys. Corp. v. Curry, 819
S.W.2d 652, 654 (Tex. App.–San Antonio 1991, no writ)). A mere statement in the
order that good cause was shown is insufficient to sustain a sanctions order. Id. 
Sanctions must be based on the acts or omissions of the represented party or
counsel–not merely on the legal merit of the pleading. Zarsky v. Zurick Mgmt., 829
S.W.2d 398, 400 (Tex. App.–Houston [14th Dist.] 1992, no writ) (the trial court’s
finding that "the Court finds substantial evidence that this Third Party lawsuit . . . was
frivolous and of no merit" to be insufficient and harmful in the context of rule 13). We
see no difference between a finding that says there was no evidence and its reciprocal,
that there is substantial evidence the lawsuit was frivolous. We hold that the findings
of the trial court fail to meet the mandatory statutory requirements of chapter 10. 
Tex. Civ. Prac. & Rem. Code Ann. § 10.005 (Vernon 2002) (court shall describe
conduct the court determined violative and explain the basis for the sanction imposed);
Rudisell v. Paquette, 89 S.W.3d 233, 238 (Tex. App.–Corpus Christi 2002, no pet.)
(in imposing sanctions, trial court is mandated to specifically detail the sanctionable
conduct in its order). We sustain Henry’s issue regarding the lack of specificity in the
findings below.
         The harm to Henry is patent. The primary basis of the large monetary sanction
was that alternative allegations were not shown to apply to the Doctors. The
additional basis for the sanction relied upon allegations that were not noticed or pled. 
Nor is the basis of the sanctions detailed or explained. We can only conclude that
Henry suffered harm in the form of a $50,000 sanction award. Tex. R. App. P.
44.1(a)(1), (2).
           Because of our disposition, a discussion of the magnitude of the sanctions and
other sub-issues are not necessary to the disposition of this appeal. Tex. R. App. P. 
47.1
          We conclude that the trial court acted outside the guiding rules and principles
in determining Henry’s representation warranted sanctions pursuant to chapter 10. See
Downer, 701 S.W.2d at 241-242. Specifically, (1) chapter 10's stringent
requirements do not apply to alternative pleadings in the context presented; Tex. R.
Civ. P. 40, 48; see also Tex. Civ. Prac. & Rem. Code Ann. § 10.003; (2) specific
conduct alleged to violate Section 10.001 must be supported by notice of the
allegations; Tex. Civ. Prac. & Rem. Code Ann. § 10.003; and (3) the trial court must
specifically detail the sanctionable conduct in its order and explain the basis for the
sanction imposed. Tex. Civ. Prac. & Rem. Code Ann. § 10.005; Rudisell, 89 S.W.3d
at 238. 
         Accordingly, we reverse and render the trial court’s sanction order. Tex. R. App.
P. 43.2(c). 
 
                                                                                 DON WITTIG
                                                                                 Justice
 
Dissenting Opinion by Justice Castillo, 
joined by Justice Rodriguez.
 
Opinion delivered and filed
this 1st day of April, 2004.
 
* * * * * * * * * * * * *
 
 



 
 
 
 
 
 
NUMBER 13-02-440-CV
 
COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS
 
CORPUS CHRISTI - EDINBURG
 
 

 
 
THOMAS J. HENRY AND THE LAW
OFFICES OF THOMAS J. HENRY,                                      Appellants,
 
v.
 
ROBERT LOW, D.O., AND STEPHEN SMITH, M.D.,               Appellees.
 

 
 
On appeal from the 36th District Court
of Aransas County, Texas.
 

 
 
DISSENTING OPINION
Before the Court En Banc



 
 

                       Dissenting Opinion by Justice Castillo
 
         I respectfully dissent. The majority reverses the trial court's imposition of
sanctions on three grounds: (1) Henry did not receive notice that the Doctors sought
sanctions under chapter 10 of the civil practice and remedies code;


 (2) the sanctions
order did not detail the sanctionable conduct or explain the basis for the sanction; and
(3) Henry's alternative pleading allegations did not violate chapter 10. I would
conclude that Henry first substitutes arguments on appeal for those he did not
preserve below, then urges us to substitute our judgment for the trial court's. I would
defer to the trial court's discretion. 
I. PRESERVATION OF ERROR
A. Procedural Background
         In September of 2001, Henry requested copies of medical records relevant to
this suit. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 4.01(d) (Vernon Supp. 2003)
(since repealed). He also sent a notice letter, which extended the two-year statute of
limitation for filing the suit to February 5, 2002. See id., § 4.01(a), (c). He filed suit
against the Doctors, among others, on January 31, 2002. 
         Also on January 31, 2002, Henry filed a motion to withdraw, stating as good
cause for the withdrawal "that a conflict of interest has arisen which prevents the Law
Offices of Thomas J. Henry from continuing representation of any of the Plaintiff's
[sic] in this case." On April 24, 2002, the trial court notified Henry that his motion to
withdraw was set on May 6, 2002. Henry filed a motion for appointment of an agent
for service under rule 103 on April 29, 2002. See Tex. R. Civ. P. 103. That same
day, he requested issuance of citation on all of the defendants. The trial court granted
the rule 103 motion by order signed April 30, 2002. 
         On May 6, 2002, the trial court heard Henry's motion to withdraw. Henry was
not present. The plaintiff appeared and stated she had no objection to Henry's
withdrawal. She told the judge she intended to hire another lawyer. The trial court 
signed an order granting Henry's motion to withdraw that same day. 
         The Doctors appeared and answered. On May 28, 2002, they filed the motions
for sanctions that are the subject of this appeal. Neither the plaintiff nor Henry filed
a written response to the sanctions motions. 
         On June 10, 2002, Henry prepared, transmitted to the court under the law
firm's letterhead, and filed a notice of nonsuit, signed by the plaintiff pro se. On
July 2, 2002, the trial court signed an order of nonsuit. 
         The sanctions proceedings continued. After notice to the parties, the trial court
held a sanctions hearing on July 30, 2002. Henry appeared at the hearing by counsel
but not in person. 
B. Pre-Sanction Preservation of Error of the Notice Issue
         On appeal, Henry complains he did not have notice that the Doctors sought
sanctions under chapter 10 of the civil practice and remedies code. He argues that the
sanctions motions requested relief only under rule 13


 and chapters 9


 and 11,


 
citing paragraphs VII and VIII of each motion, which referred only to rule 13 and
chapters 9 and 11. As a consequence, Henry maintains in a sub-issue of his challenge
to the trial court's exercise of discretion in sanctioning him, the trial court abused its
discretion in basing its sanctions order on evidence of Henry's filing of other lawsuits. 
 I would overrule this sub-issue for two reasons: (1) Henry had actual notice the
Doctors sought sanctions under chapter 10; and (2) Henry waived his objection to lack
of notice under chapter 10 by not objecting on that basis before, during, or after the
sanctions hearing. 
1. Actual Notice
         The introductory paragraphs of both motions stated that the motions were filed
pursuant to rule 13 and chapters 9 and 10. Also, the motions seek, among
other requested relief, "An Order that Plaintiffs and/or Plaintiffs' former
counsel, Thomas J. Henry, pay a monetary penalty into the Court as the Court
deems appropriate to punish them for this egregious conduct and to deter them
from similar conduct in the future." Payment of a monetary penalty into the
registry of the court is a sanction available only under chapter 10. See Sterling v.
Alexander, 99 S.W.3d 793, 799-800 (Tex. App.–Houston [14th Dist.] 2003, pet.
denied). I would find that Henry had actual notice the Doctors pursued sanctions
under chapter 10. Further, chapter 10 allows imposition of a sanction to deter
repetition of the sanctioned conduct. Tex. Civ. Prac. & Rem. Code Ann. §10.004(b)
(Vernon 2002). I would find that evidence of similar conduct in other cases is relevant
to the trial court's assessment of an appropriate sanction under chapter 10. See Tex.
R. Evid. 401, 402, and 405. Accordingly, I would hold that Henry's actual notice that
the Doctors sought sanctions under chapter 10 also put him on actual notice
that the Doctors could introduce evidence of his conduct in similar lawsuits. See
Sterling, 99 S.W.3d at 797. 
         Moreover, even assuming, arguendo, that the Doctors' sanctions motions did
not provide actual notice to Henry that they intended to seek sanctions under
chapter 10, Henry's counsel did not object to the lack of notice before, during, or
after the sanctions hearing. He had repeated opportunities to do so.  
 2. Waiver of Notice
          Before the sanctions hearing started, the trial court discussed with the attorneys
how long each side would need to present their case:
THE COURT: All right. And it's your motion, [Doctors'
Counsel]?
 
[DOCTORS' COUNSEL]:It is, yes, sir. 
 
THE COURT:Counsel?
 
[HENRY'S COUNSEL]: [Henry's Counsel] for one of the Respondents,
the Law Offices of Thomas J. Henry.
 
THE COURT:All right.
 
And you're estimating an hour and a half or
two hours, [Doctors' Counsel]?
 
         [DOCTORS' COUNSEL]:  I am, Your Honor.
 
THE COURT:Mr. – [Henry's Counsel], what is your
estimate?
 
[HENRY'S COUNSEL]:My estimate is five to ten minutes. 
 
THE COURT: Okay.
 
[DOCTORS' COUNSEL]: Your Honor, the reason for the disparity,
obviously, is that I have quite a bit of evidence
that I believe is relevant and available for the
Court, and that is the reason for the
row of individuals seated behind me. And I
think that under both Rules 9 and 10 of the
Civil Practice and Remedies Code evidence on
this issue is pertinent. 
 
So, in – in light of that, Your Honor, I'm
announcing an hour and a half to two hours. 
         Henry's counsel did not object that Henry did not have notice that the Doctors
sought sanctions under chapter 10. The Doctors' counsel raised chapter 10 a second
time:
THE COURT:All right. Did you ask for some sort of relief
against the Plaintiff individually and in her
representative capacity, [Doctors' Counsel]?
 
[DOCTORS' COUNSEL]:Your Honor, I think the motion is couched in
terms of asking for sanctions against the law
firm of Thomas J. Henry and/or Mrs. White. 
I will tell you that I have no intention of asking
this Court to impose sanctions against Mrs.
White, because my arguments in my complaint
deal with the actual filing of the suit at a time
when she was represented. 
 
And Rule 10 of the Texas Civil Practices and
Remedies Code specifically states that
sanctions may not be awarded against a
represented party under that provision. . . .
 
         Henry's counsel again did not object that Henry did not have notice that the
Doctors sought sanctions under chapter 10. After the close of evidence, the trial court
heard the arguments of counsel. The Doctors' counsel argued:
[DOCTORS' COUNSEL]:Now, I think that under Chapter 10 of the Civil
Practices and Remedies Code wherein it states
that the Court can enter a sanction to deter
similar conduct and – and by that, require that
the offending party pay a penalty into the
Court, that it must be a determination that the
pleading in White was groundless. It must be
followed by a meaningful sanction. And given
the wealth of the Thomas J. Henry law firm,
as evidenced by the advertising effort that
they have put in over the years, including the
erection of a wall right outside Driscoll
Hospital alerting patients and parents that they
take C.P. cases, cerebral palsy – 
 
[HENRY'S COUNSEL]:Your Honor, I'm going to object. He's arguing
all kinds of facts that he never put in evidence. 

         THE COURT:                  Sustained. 
 
         Once again, Henry's counsel did not object that Henry did not have notice that
the Doctors sought sanctions under chapter 10. The Doctors' counsel then asked the
court for relief available only under chapter 10:
[DOCTORS' COUNSEL]:I would respectfully ask this Court to enter a
sanction in this case of $100,000.00 against
the Thomas J. Henry law firm. I would ask
the Court to Order that they pay that as a
penalty into the court, to serve as a deterrent
to that law firm and others similar – similarly-situated or so inclined to engage in similar
conduct. . . .
 
         Henry's counsel responded:
 
[HENRY'S COUNSEL]:Your Honor, I'll be brief. This hearing has
spun into something that I'm sure it didn't
begin to be. This is a case for sanctions under
Rule 9 and Rule 13. There is a very high
standard that Doctors' counsel has to go and
prove in order to merit those sanctions. The
burden is on Mr. Oncken to prove that these –
in this particular lawsuit, these two defendants
were sued baselessly and groundlessly. . . .
 
         Henry's counsel did not object, however, that Henry had no notice under
chapter 10 that Henry's conduct in other lawsuits would be at issue in the sanctions
hearing. The Doctors' counsel countered: 
[DOCTORS' COUNSEL]:Both Chapter 9 and Chapter 10 of the Civil
Practice and Remedies Code specifically state
that the signing of a pleading constitutes a
certificate by the signatory that to the
signatory's best knowledge, information, and
belief, formed after reasonable inquiry, the
pleading is not groundless and brought in bad
faith. . . . 
 
         Yet again, Henry's counsel did not object that Henry did not have notice that
the Doctors sought sanctions under chapter 10. The Doctors' counsel continued:
[DOCTORS' COUNSEL]:Mr. Henry signed the pleading. Mrs. White
came to the Henry firm for legal advice. 
That's why Chapter 10 says you can't seek
sanctions for filing a groundless pleading
against a party when they're represented by
counsel. It's because they're not lawyers. 
They depend on and rely upon the advice, the
instruction, and the actions of their attorneys. 
Both Chapter 9 and Chapter 10 of the Civil
Practice and Remedies Code specifically state
that the signing of a pleading constitutes a
certificate by the signatory that to the
signatory's best knowledge, information, and
belief, formed after reasonable inquiry, the
pleading is not groundless and brought in bad
faith. . . . 
 
         For the fifth time, Henry's counsel did not object to any lack of notice under
chapter 10. Finally, Henry's counsel did not object when the trial court pronounced,
from the bench after the hearing, a sanction that was available only under chapter 10.          A party waives the right to object to a lack of notice by participating in a
hearing without notifying the court of its objection on notice grounds. See Tex.
R. App. P. 33.1; see also Manning v. North, 82 S.W.3d 706, 714 (Tex.
App.–Amarillo 2002, no pet.) (dismissal hearing); Wyatt v. Furr's Supermarkets,
Inc., 908 S.W.2d 266, 270 (Tex. App.–El Paso 1995, writ denied) (summary-judgment hearing). Henry did not complain before, during, or after the sanctions
hearing that he had no notice the Doctors would proceed under chapter 10. See
Negrini v. Beale, 822 S.W.2d 822, 824 (Tex. App.–Houston [14th Dist.] 1992, no
writ) (summary-judgment hearing). He did not seek a recess or continuance when it
became apparent from the Doctors' arguments and presentation of witnesses that his
conduct in other lawsuits was at issue. See id. at 823-24. Henry "not only failed to
object, but appeared, did not request a continuance, and fully participated in the
hearing." See Powers v. Palacios, 771 S.W.2d 716, 718 (Tex. App.–Corpus
Christi 1989, writ denied). On this record, I would find that Henry waived his
objection that he had no notice that the Doctors sought sanctions under chapter 10
as well as under rule 13 and chapters 9 and 11. See id. 
         Further, when the Doctors called Dr. Robert Mastin, one of the witnesses about
whose testimony Henry now complains, Henry's counsel objected as follows:
[HENRY'S COUNSEL]:Your Honor, we'd object to this witness. He's
not a party to this case and has never been a
party to this case. I'm not sure what
relevance any testimony that he has has to do
with the issues of whether or not a baseless
lawsuit was filed in this case. 
 
[DOCTORS' COUNSEL]:Response, Your Honor?
 
THE COURT:No. Overruled. 
         Dr. Mastin then testified without further objection until the Doctors offered a
copy of a petition and citation in another lawsuit filed by Henry against Dr. Mastin. 
Henry's counsel objected to the exhibit on relevancy grounds: 
 THE COURT:Objection?
 
[HENRY'S COUNSEL]:Same objection, Your Honor, as to relevance. 

         THE COURT:                  Overruled. Admitted over objection. 
         Dr. Mastin then testified, without objection, to the particulars of that lawsuit. 
He said he had never treated the patient involved. He also said he had compared the
allegations in that petition with the allegations in the petition Henry filed in this case,
and they were "word-for-word" identical except for the names of the parties.          Also without objection, Dr. Mastin then testified to the contents of a notice
letter sent by Henry to Dr. Mastin in a second case. Henry's counsel did not object
until the Doctors' counsel offered the notice letter itself into evidence. At that point,
Henry's counsel asked for a running objection:
[HENRY'S COUNSEL]:Running objection as to relevance, Your
Honor. 
 
THE COURT:I'll overrule it. You can reassert it later if
they're not – 
 
[DOCTORS' COUNSEL]:I'll tender Exhibit 9 to the Court, Your Honor,
and ask that it be admitted. 
 
         THE COURT:                  Exhibit 9 is admitted over objection. 
 
         Dr. Mastin then testified, without objection, that after sending the notice letter,
Henry filed suit on the claim against the other doctors in his practice group and him. 
He said that two of the other doctors were not members of the practice group at the
time the patient was treated. 
         Also without objection, Dr. Mastin went on to testify that Henry withdrew from
representing the plaintiffs in both of the other two cases, just as he had in this case. 
The trial court sustained Henry's counsel's objection on authenticity grounds to a
Nueces County District Clerk docket sheet. However, by the time Henry's counsel had
objected, Dr. Mastin had already testified about the information contained on the
docket sheet: Henry had withdrawn from the second case, and it had been dismissed. 
         The Doctors' counsel then called Dr. Christine Canterbury. Henry's counsel
again asked for a running objection: 
[HENRY'S COUNSEL]:Your Honor, if this is going to be cumulative,
I have a running objection as to relevance. Dr.
Canterbury didn't have anything to do with the
White case. 
 
THE COURT:Would you like to stipulate as to what her
testimony might be?
 
[HENRY'S COUNSEL]:I have no idea what her testimony is going to
be, Your Honor. 
 
THE COURT:Fine. Call your witness. 
 
         Dr. Canterbury then confirmed Dr. Mastin's testimony, without objection, that
another doctor and she had been sued by Henry even though they were not members
of the practice group at the time the patient was treated. The Doctors then sought
to introduce a notice letter in a third suit. Henry's counsel objected:
THE COURT:Objection?
 
[HENRY'S COUNSEL]:No objection, Your Honor, except for
relevance. 
 
THE COURT:Overruled. Admitted over objection. 
 
         Dr. Canterbury then testified, without objection, that she had not treated the
patients named in the notice letter. When the Doctors offered a letter from Henry that
withdrew the notice letter, Henry's counsel had no objection: 
[DOCTORS' COUNSEL]:Offer Exhibit 12, Your Honor.
 
[HENRY'S COUNSEL]:No objections, Your Honor. 
 
THE COURT:Admitted. 
 
         A party should object every time inadmissible evidence is offered. Ed
Rachal Found. v. D'Unger, 117 S.W.3d 348, 368 (Tex. App.–Corpus Christi 2003,
pet. filed) (en banc). If a party objects to certain evidence but later does not object
when the same evidence is introduced, the party waives its objection. Richardson v.
Green, 677 S.W.2d 497, 501 (Tex. 1984). Henry's counsel attempted a running
objection, an exception to the general rule that a party must continue to object and get
a ruling for each individual instance of inadmissible testimony. See In re A.P.,
42 S.W.3d 248, 260-61 (Tex. App.–Waco 2001, no pet.). However, the trial court
overruled Henry's counsel's first request for a running objection, and counsel did not
pursue the second request to a ruling as required by rule 33.1(a). See id.; see also
Tex. R. App. P.  33.1(a). The same evidence came in elsewhere without objection. 
         This Court has held that the determination of whether a prior objection is
sufficient to cover a subsequent offer of similar evidence requires a case-by-case
analysis. Correa v. GMC, 948 S.W.2d 515, 518 (Tex. App.–Corpus Christi 1997, no
pet.). Considerations in determining the adequacy of the objection are: (1) the
proximity of the objection to the subsequent testimony; (2) which party has elicited
the subsequent testimony; (3) the nature and similarity of the subsequent testimony
as compared to the prior testimony and objection; (4) whether the subsequent
testimony has been elicited from the same witness; (5) whether a running objection
was requested or granted; and (6) whether any other circumstances suggests that the
objection should not have to be re-urged. Id. at 518-19. 
         Here, Henry did not argue to the trial court that his relevancy objections were
based on the Doctors' allegations of violations of rule 13 and chapters 9 and 11, not 
chapter 10. Had he done so, application of the Correa factors might lead to the
conclusion that Henry adequately preserved his objections to the testimony. See id. 
However, Henry did not specifically object on that basis, and he did not object to
proceeding under chapter 10 even after repeated references by opposing counsel to
its provisions. The trial court ruled on Henry's objections within that context,
unaware of Henry's reason for objecting on relevancy grounds. Thus, on
this record, I would conclude that Henry did not preserve error over his objections
to Dr. Mastin and Dr. Canterbury's testimony. See Duperier v. Tex. State
Bank, 28 S.W.3d 740, 755-56 (Tex. App.–Corpus Christi 2000, pet. dism'd by agr.). 
  C. Post-Sanctions Preservation Regarding the Specificity of the Sanctions Order
         On July 31, 2002, the trial court signed an order granting the Doctors' motions
for sanctions. It ordered payment by Henry of $50,000 into the registry of the court,
or $25,000 for each of the Doctors' motions. On August 2, 2002, the trial court
signed findings of fact and conclusions of law regarding its imposition of sanctions as
well as a revised order incorporating its findings and conclusions. On August 26,
2002, Henry filed a post-sanctions motion for new trial and a motion to modify,
vacate, or reform the sanctions order (the "First Post-Sanctions Motions"). See Tex.
R. Civ. P. 329b. The First Post-Sanctions Motions cross-reference and incorporate one
another. 

1. The First Post-Sanctions Motions
         Among thirty-nine points urged as grounds for vacating the sanctions order,
Henry asserted in the First Post-Sanctions Motions that: (1) the Doctors' motions for
sanctions did not request relief under chapter 10; (2) the trial court abused its
discretion in allowing and considering evidence of Henry's past conduct in other
lawsuits or claims; and (3) the alternative pleading allegations against the Doctors are
legally and factually insufficient to support the imposition of sanctions. Nowhere in
the First Post-Sanctions Motions did Henry assert that the findings in the sanctions
order did not adequately detail the sanctionable conduct or explain the basis for the
sanction. 
                           2. The Supplemental Post-Sanctions Motion
         On September 23, 2002, more than thirty days after the trial court signed the
modified sanctions order on August 2, 2002, Henry filed his "First Supplemental
Motion to Vacate, Modify, Correct or Reform Modified Judgment" (the "Supplemental
Post-Sanctions Motion"). Among thirteen grounds, the Supplemental Post-Sanctions
Motion asserted for the first time that "This Court's sanctions order fails to sufficiently
set out this Court's findings of good cause justifying the imposition of sanctions." 
3. The Post-Sanctions Hearing 
         The trial court heard Henry's post-sanctions motions on October 15, 2002. 
Henry appeared for this hearing in person. The trial court sustained the Doctors'
objection to reopening the evidence but permitted Henry to make a bill of exceptions
of his testimony. By written orders that same date, the trial court denied the motion
for new trial and the supplemental motion to modify. The record does not reflect an
order denying the original motion to modify, vacate, or reform the sanctions order. 
4. The Reconsideration Motion
         On November 5, 2003, Henry filed a motion to either reconsider or modify,
correct or reform the modified judgment (the "Reconsideration Motion"). Among
nineteen grounds, Henry urged: 
(1) "This Court's sanctions order fails to sufficiently set forth this
Court's findings of good cause justifying the imposition of sanctions. . . . 
Furthermore, the order fails to explain the basis for the sanction imposed
as required by section 10.005 of the Texas Civil Practice and Remedies
Code." 
 
(2) "The sanctions order here, however, does not specifically identify
the offending allegation or factual contention, but instead states broadly
that 'each and all of the allegations' were not likely to have evidentiary
support after a reasonable opportunity for investigation. This vague
statement does not satisfy Chapter 10's specificity requirement."
 
(3)"The order does not state, with particularity, good cause for
finding that the pleadings in this case were groundless and brought in bad
faith for purposes of harassment or that the pleadings did not and could
not, after a reasonable opportunity for discovery, have an evidentiary
basis. Instead, the order merely recites the rule and the chapter, without
including a specific description of the offending conduct or a reason for
imposing the sanctions."
However, the trial court decided that Henry's specificity objections, filed more than
thirty days after the modified sanctions order, came too late to be considered. 

5. The Reconsideration Order
         By written order dated November 14, 2002, the trial court found that the First
Post-Sanctions Motions "were the only timely filed motions on August 22, 2002." It
specifically found: "All new arguments and requests for relief not timely filed
within 30 days of the August 2, 2002 order, are DENIED because they were not
timely raised." See Willacy County Appraisal Review Bd. v. S. Padre Land
Co., 767 S.W.2d 201, 202 (Tex. App.–Corpus Christi 1989, no writ) ("We hold,
therefore, that all motions for new trial to be timely filed, whether original or amended
must be filed within thirty days after the judgment is signed by the trial court."). 
D. Appellate Preservation Regarding the Specificity of the Sanctions Order
         Henry raises forty-four issues and sub-issues on appeal. In none of them does
he challenge the trial court's denials of his post-sanctions motions. Specifically, 
Henry does not assert on appeal that the trial court abused its discretion in denying as
untimely all grounds not raised within thirty days of the sanctions order. Henry raised
his complaint regarding the specificity of the sanctions order for the first time on
September 23, 2002, which was untimely. I would not consider Henry's specificity
complaint in this appeal. See id. A complaining party's failure to object to the
form of the sanctions order waives the error for appellate review. Alexander v.
Alexander, 956 S.W.2d 712, 714-15 (Tex. App.–Houston [14th Dist.] 1997, pet.
denied); Campos v. Ysleta Gen. Hosp., Inc., 879 S.W.2d 67, 70 (Tex. App.–El Paso
1994, writ denied); McCain v. NME Hosp., Inc., 856 S.W.2d 751, 756 (Tex.
App.–Dallas 1993, no writ); Bloom v. Graham, 825 S.W.2d 244, 247 (Tex. App.–Fort
Worth 1992, writ denied). I would find that Henry failed to preserve for our review
his complaint about the specificity of the sanctions order. See Tex. R. App. P. 33.1(a);
see also Alexander, 956 S.W.2d at 715. 
         Thus, given this record, I would hold that Henry waived two of the three
grounds the majority finds for reversing the sanctions order: (1) Henry waived his
complaint that he did not receive notice that the Doctors sought sanctions under
chapter 10 when he failed to object or seek a continuance of the sanctions hearing on
that basis; and (2) Henry waived any complaint the sanctions order did not adequately
detail the sanctionable conduct or explain the basis for the sanctions when he failed
to timely raise the objection in his post-sanctions motions and then failed to challenge
the trial court's untimeliness ruling on appeal. I turn to the third ground on which the
majority reverses the sanctions order, that an alternative pleading cannot serve as the
basis of sanctions under chapter 10. 
 II. THE TRIAL COURT'S DISCRETION
A. Presumptions and Burdens of Proof in Sanctions Motions
         Generally, courts presume that pleadings and other papers are filed in good
faith.  GTE Communications Sys. Corp. v. Tanner, 856 S.W.2d 725, 730 (Tex. 1993)
(orig. proceeding). In determining if sanctions are proper, the trial court must
examine the circumstances existing when the litigant filed the pleading. See Griffin
Indus. v. Grimes, No. 04-02-00430-CV, 2003 Tex. App. LEXIS 3439,
at *11-*12 (Tex. App.–San Antonio Apr. 23, 2003, no pet.) (applying good-faith
presumption to chapter 10); see also Home Owners Funding Corp. of Am. v.
Scheppler, 815 S.W.2d 884, 889 (Tex. App.–Corpus Christi 1991, no writ) (applying
good-faith presumption to rule 13). The trial court considers the acts or omissions of
the represented party or counsel, not merely the legal merit of a pleading or motion. 
Grimes, 2003 Tex. App. LEXIS 3439, at *11; N.Y. Underwriters Ins. Co. v. State
Farm Mut. Auto. Ins. Co., 856 S.W.2d 194, 205 (Tex. App.–Dallas 1993, no writ). 
The party seeking sanctions bears the burden of overcoming the presumption of good
faith in the filing of pleadings. Tanner, 856 S.W.2d at 731. 
 B. Standard of Review
         Imposing an available sanction is left to the sound discretion of the
trial court.  Koslow's v. Mackie, 796 S.W.2d 700, 704 (Tex. 1990); Rudisell
v. Paquette, 89 S.W.3d 233, 236 (Tex. App.–Corpus Christi 2002, no pet.). 
We may not substitute our judgment for the trial court's. Davis v. Huey,
571 S.W.2d 859, 862 (Tex. 1978). The test for determining if the trial court abused
its discretion is whether it acted without reference to any guiding rules and principles
to the extent the act was arbitrary or unreasonable. Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); Alejandro v. Bell, 84 S.W.3d 383, 392
(Tex. App.–Corpus Christi 2002, no pet.). A trial court abuses its discretion
in imposing sanctions only if it bases its order on an incorrect view of the
law or an erroneous assessment of the evidence. Randolph v. Jackson Walker,
L.L.P., 29 S.W.3d 271, 276 (Tex. App.–Houston [14th Dist.] 2000, pet. denied). 
A party attacking a trial court's decision as an abuse of discretion carries a heavy
burden. Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig.
proceeding). 
C. Analysis
1. The Trial Court's Discretion to Sanction under Chapter 10
         Section 10.001 of chapter 10 provides: 
         The signing of a pleading or motion as required by the Texas Rules
of Civil Procedure constitutes a certificate by the signatory that to the
signatory's best knowledge, information, and belief, formed after
reasonable inquiry:
 
(1)the pleading or motion is not being presented for any
improper purpose, including to harass or to cause unnecessary
delay or needless increase in the cost of litigation;
 
(2)each claim, defense, or other legal contention in the
pleading or motion is warranted by existing law or by a
nonfrivolous argument for the extension, modification, or reversal
of existing law or the establishment of new law;
 
(3)each allegation or other factual contention in the
pleading or motion has evidentiary support or, for a specifically
identified allegation or factual contention, is likely to have
evidentiary support after a reasonable opportunity for further
investigation or discovery; and
 
(4)each denial in the pleading or motion of a factual
contention is warranted on the evidence or, for a specifically
identified denial, is reasonably based on a lack of information or
belief. 
Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (Vernon 2002). A court may punish
violations of chapter 10 by imposing sanctions on the "person, [the] party represented
by the person, or both" who "has signed [the] pleading or motion in violation of
Section 10.001." Tex. Civ. Prac. & Rem. Code Ann. § 10.004(a) (Vernon 2002). 
         In two sub-issues, Henry complains the trial court abused its discretion in
concluding that a pleading that asserts alternative claims without identifying particular
defendants to which each claim applies is sanctionable. He maintains that allegations
in the petition here asserted claims against the Doctors for negligent acts other than
prescribing Propulsid. Henry argues that the Doctors did not meet their burden of
overcoming the presumption of good faith that attached to the papers he filed. In a
separate sub-issue, he asserts that the only way his subjective bad faith could be
proved was through his testimony at the sanctions hearing, which was lacking. 
However, unlike rule 13, section 10.001 of chapter 10 does not expressly include bad
faith as an element of the conduct it prohibits. See id. § 10.001. Further, assuming,
without deciding, that section 10.001 of chapter 10 imposes an implied bad-faith
element, I would conclude that sanctionable conduct may be proved by circumstantial
as well as direct evidence. See Schexnider v. Scott & White Mem'l Hosp.,
953 S.W.2d 439, 441-42 (Tex. App.–Austin 1997, no writ) (holding that imposition
of sanctions against attorney who filed medical malpractice claim against twenty-nine
physicians and then non-suited all twenty-nine was supported by reasonable inference
that attorney joined physicians knowing they only had indirect connection to claim and
that mere filing of suit would have coercive effect on claim). 
         The trial court took judicial notice of the pleadings in this case, and I agree with
the majority that allegations in the petition that asserted claims against the Doctors for
negligent acts other than prescribing Propulsid is some evidence mitigating against the
imposition of sanctions. However, the petition shows that the Doctors had only
indirect connections to the claims. Further, Dr. Mastin and Dr. Canterbury testified
that Henry had filed a "word-for-word" identical lawsuit against them without a
reasonable basis and asserted unfounded claims in two more cases. The witnesses
also testified that Henry quickly withdrew from his representation of the claimants in
the other cases, which Henry also had pursued without a reasonable basis. Further,
I am unpersuaded that the looming statute-of-limitation deadline excuses Henry's
pleading. Henry had represented the plaintiff at least four months before he filed the
petition, long enough to obtain the relevant medical records. Moreover, Henry
continued to represent the plaintiff after he filed a motion to withdraw as well as after
the trial court signed the order of withdrawal.


 I would find that the allegations in the
petition and the nonsuit of the claims after the Doctors filed motions for sanctions
support an inference that Henry filed suit knowing that the Doctors only had an
indirect connection to the claim and that the mere filing of suit would have a coercive
effect. See id. I would conclude that some evidence reasonably supports the
imposition of sanctions. See Zorilla v. Wahid, 83 S.W.3d 247, 255 (Tex.
App.–Corpus Christi 2002, no pet.) ("An abuse of discretion does not exist if the trial
court bases its decision on conflicting evidence and some evidence reasonably
supports the trial court's decision."). 
          Also as a sub-issue within his first issue, Henry complains of the trial court's
exclusion of evidence Henry offered during the hearing on his post-sanctions motions,
evidence he asserts demonstrated his reasonable basis for filing suit against the
Doctors. Whether a motion for new trial will be granted or denied is within the trial
court's discretion. Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983),
overruled on other grounds, Moritz v. Preiss, 121 S.W.3d 715 (Tex. 2003). Other
than arguing that he was not subpoenaed by the Doctors to appear at the sanctions
hearing, Henry did not explain his failure to file a written response to the sanctions
motions or his failure to appear and present evidence to the court at the sanctions
hearing. He did not offer proof that the evidence had come to his attention only after
the sanctions hearing. Nor did he maintain he had used due diligence in procuring the
evidence or any of the other predicates that would have informed the trial court's
exercise of discretion in considering the evidence after having ruled already on the
Doctors' sanctions motions. See Jackson, 660 S.W.2d at 809-10; see also
Dankowski v. Dankowski, 922 S.W.2d 298, 305 (Tex. App.–Fort Worth 1996, writ
denied). Finally, Henry does not challenge on appeal the trial court's denial of his
motion for new trial. I would hold that the trial court did not abuse its discretion in
refusing to consider the evidence Henry offered in support of his post-sanctions
motions. See Dankowski, 922 S.W.2d at 305. 
          I have scrutinized the trial court's findings and conclusions under an abuse-of-discretion standard. I cannot conclude that the trial court, in sanctioning Henry, acted
unreasonably, arbitrarily, or without reference to chapter 10 of the civil practice and
remedies code. See Zorilla, 83 S.W.3d at 255. I would overrule Henry's first issue
complaining of the trial court's exercise of discretion in sanctioning him. 
2. The Trial Court's Discretion in Determining the Amount of Sanction
         Henry's second issue claims that the $50,000 sanction is excessive. An
imposed sanction must not be excessive. TransAmerican Natural Gas Corp. v.
Powell, 811 S.W.2d 913, 917 (Tex. 1991); Roberts v. Golden Crest Waters,
Inc., 1 S.W.3d 291, 292 (Tex. App.–Corpus Christi 1999, no pet.). Scrutinizing the
imposed sanction under an abuse-of-discretion standard, I cannot conclude that the
trial court acted without reference to any guiding rules and principles in determining
the amount of sanction. See Downer, 701 S.W.2d at 241-42. I would find that the
imposed $50,000 sanction ($25,000 for each of the two Doctors) is not clearly
arbitrary and excessive. Compare Skepnek v. Mynatt, 8 S.W.3d 377, 380 (Tex.
App.–El Paso 1999, pet. denied) (upholding $25,000 sanction to be paid into registry
of court pursuant to chapter 10) with Metzger v. Sebek, 892 S.W.2d 20, 53 (Tex.
App.–Houston [1st Dist.] 1994, writ denied) (reversing as abuse of discretion
rule 13 sanction of $994,000 plus interest). Thus, I also would overrule Henry's
second issue complaining of the amount of the sanction. 
 

         Accordingly, I would affirm the trial court's sanctions order. 
                                                                        ERRLINDA CASTILLO
                                                                        Justice
 
Joined by Justice Rodriguez.
 
Dissenting Opinion delivered and filed
this 1st day of April, 2004.